IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:14-CV-00015-D

NANETTE G. SUTTON, )
)
Plaintiff/Claimant, )
)
) **MEMORANDUM AND**
v. ) **RECOMMENDATION**
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
)
Defendant. )

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-32, -34] pursuant to Fed. R. Civ. P. 12(c). Claimant Nanette G. Sutton ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion [DE-36], and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI on October 24, 2006, alleging disability beginning November 1, 2003. (R. 17, 146-48, 167, 269). The claim was denied initially and upon reconsideration. (R. 17, 75-76). A hearing before Administrative Law Judge ("ALJ") D. Burgess Stalley was held on May 21, 2009, at which Claimant was represented by counsel and a vocational

expert ("VE") appeared and testified. (R. 17, 64-73). At the conclusion of the hearing the ALJ indicated he would order mental and physical consultative examinations due to lack of medical evidence in the file. (R. 71). The ALJ held a supplemental hearing on September 15, 2009. (R. 17, 30-63). On September 21, 2009, the ALJ issued a decision denying Claimant's request for SSI benefits. (R. 17-29). On March 4, 2011, the Appeals Council denied Claimant's request for review. (R. 1-6). On April 29, 2011, Claimant filed a case in this court seeking review of the Commissioner's final decision. (R. 329-30). On December 21, 2011, the court allowed the Commissioner's unopposed request to remand the case for further administrative proceedings. (R. 332).

On September 19, 2012, the Appeals Council issued an order vacating the September 21, 2009 final decision and remanding the case to an ALJ for resolution of several issues. (R. 335-37). On August 19, 2013, ALJ Odell Grooms held a hearing, at which Claimant was represented by counsel and a VE appeared and testified. (R. 268, 278-326). On October 25, 2013, the ALJ issued a decision denying Claimant's request for SSI benefits. (R. 268-77). The Appeals Council did not initiate review of the claim, Pl.'s Mem. [DE-33] at 2, and Claimant then filed a case in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial

2

evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ

3

to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant contends the ALJ erred (1) in determining Claimant had the residual functional capacity ("RFC") to do medium work without consideration of the prior ALJ's determination that Claimant had the capacity to do only sedentary work, and (2) in failing to weigh the opinion of Dr. Ahmed, a consultative examiner who limited Claimant to sedentary work. Pl.'s Mem. [DE-33] at 8-10, Pl.'s Resp. [DE-36] at 1-3.

### IV. FACTUAL HISTORY

#### A.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the application date. (R. 270). Next, the ALJ determined Claimant had the following severe impairments: severe, recurrent major depression without psychosis and history of substance abuse. *Id.* The ALJ also found Claimant had the following nonsevere impairments: hypertension, gastroesophageal reflux disease, status post rib fracture, status post left tibia and fibula fractures, and history of forearm fracture. (R. 270-71). However, at step three, the ALJ concluded

4

these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 271). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in her activities of daily living and moderate difficulties in social functioning and concentration, persistence and pace, with no episodes of decompensation of extended duration. (R. 271-72).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] limited to simple tasks with no more than occasional interaction with the general public. (R. 273-75). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 273). At step four, the ALJ concluded Claimant had no past relevant work. (R. 275). At step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 276).

### B. Claimant's Testimony at the Administrative Hearing

At the time of the August 19, 2013 administrative hearing, Claimant was 57 years old and living with her sister in a mobile home. (R. 288-89). Claimant is a high school graduate with no further educational or vocational training. (R. 294-95). She receives $200.00 a month in food stamp assistance and has no other income. (R. 291). Claimant last worked in 2004 for a little more than a year as a companion sitter for an Alzheimer's patient, and her duties included watching the patient

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. § 416.967(c).

5

at all times so he did not wander off. (R. 295). She was paid weekly, and although she did not recall her exact salary, she guessed it was $6.00 to $7.00 per hour, five to six hours per day, Monday through Friday. (R. 295-96).

Claimant explained numerous medical conditions supporting her disability claim and her inability to work full-time. She has pain in her left leg, right arm, both hips, and neck. (R. 296-95). Claimant's left leg and right arm were broken and her ankle was crushed several years ago, but she has experienced constant pain ever since that time. (R. 297-98). She is unsure about the source of her hip pain, but believes it may be associated with her leg injury. (R. 298-99). Claimant takes over-the-counter ibuprofen daily for her pain. (R. 299). She was previously prescribed Meloxicam, but can no longer afford prescription medications and has had difficulty getting to the doctor due to lack of transportation. *Id.* Claimant rated her leg pain without medication as an eight out of ten, with ten being so severe she would require emergency care, and her medication reduced the pain to a four or five out of ten. (R. 300). Claimant's right arm hurts somewhat less than her leg, but she recently began experiencing difficulty using her thumb and cannot reach out and turn her arm or lift and carry. (R. 301). Activity aggravates her pain. (R. 302). Claimant's hips hurt two to three times a week for an hour or two, and she feels bone rubbing against bone. *Id.* She also has neck pain from an automobile accident roughly eight years prior to the hearing. (R. 303).

Claimant can sit for thirty minutes before her hip and leg lock up and she has to change positions, and she can stand for ten to fifteen minutes before her feet and legs start to hurt. *Id.* Claimant does not walk much and could probably walk one to two blocks. (R. 303-04). She can lift no more than approximately ten pounds because she cannot hold and lift with her right hand. (R. 304). Claimant would have difficulty holding her arms above her head or raising her right arm above

6

shoulder level. (R. 307-08). Claimant can bend at the waist but has difficulty kneeling due to the condition of her left leg. (R. 308-09).

Claimant suffers from depression and has good day and bad days. (R 309). She has bad days two to three times a week, and some days she has crying spells and thoughts of suicide, but her depression has improved. (R. 309). Claimant stopped taking her depression medication about nine months prior to the hearing. *Id.* Claimant has trouble with her memory and is forgetful. (R. 312). Claimant denied any drug addiction, but admitted using cocaine once or twice a week three years prior to the hearing. (R. 310).

Claimant had recently obtained a driver's license after not having one for many years, but she drives only two to three times a month to the grocery store, which is roughly 15 minutes from her home. (R. 291-94). One of Claimant's three sisters drives her most of the time, and one of her sisters drove her to the hearing. (R. 292, 294). Claimant tries to cook, but has difficulty handling the pots and pans so she mostly makes sandwiches, and she also does some laundry and vacuuming. (R. 310-11). Claimant does not socialize aside from seeing her sisters and talking to some other family members on the phone. (R. 312-14).

## C.  Vocational Expert's Testimony at the Administrative Hearing

Donna Mancini testified as a VE at the administrative hearing. (R. 314-24). After the VE classified Claimant's past work (R. 316), the ALJ posed the following hypothetical to the VE: assume a hypothetical individual of the same age, education and prior work experience as Claimant, limited to medium work and simple tasks in a setting with few workplace changes and requiring no more than occasional interaction with the general public. (R. 317). The VE opined that such a hypothetical individual could perform Claimant's past work of companion sitter. *Id.* The ALJ next

7

asked whether an individual limited to sedentary work could perform the companion sitter job, and the VE answered in the affirmative. (R. 318). Claimant's attorney argued that the companion sitter job did not qualify as past relevant work, due to the fact that her reported earnings of roughly $7,000.00 is not indicative of full-time work. (R. 319-20). The ALJ then further questioned the VE as to whether there was other work at the medium exertion level that the hypothetical individual could perform. (R. 322). The VE provided the following positions: hospital cleaner, medium exertion, SVP of 2, Dictionary of Occupational Titles ("DOT") number 323.687-010; wall cleaner, medium exertion, SVP of 2, DOT number 381.687-026; and hand packager, medium exertion, SVP of 2, and DOT number 920.587-018. (R. 322-23). The ALJ then changed the hypothetical to include a restriction to light work, and the VE listed the following positions that a person so restricted could perform: mail clerk, light exertion, SVP of 2, and DOT number 209.687-026; routing clerk, light exertion, SVP of 2, and DOT number 222.687-022; and marker, light exertion, SVP of 2, and DOT number 209.587-034. (R. 323-24). The VE indicated her testimony was consistent with the DOT. (R. 324).

## V. DISCUSSION

### A. The ALJ's Failure to Consider the Prior ALJ's RFC Determination

Claimant contends that the ALJ erred in determining Claimant could perform medium[2] exertion work without considering the prior ALJ's determination that Claimant was limited to sedentary work. Pl.'s Mem. at 8-9. Specifically, Claimant argues that the first ALJ found Claimant to be 50 years of age on the application date but misapplied the Medical Vocational Guidelines (the

---

[2] While Claimant's brief, in places, states the ALJ found Claimant capable of performing light exertion work, Pl.'s Mem. at 1 & 8, it is clear from the ALJ's decision that he concluded she could perform medium exertion work (R. 273).

8

"Grids") for a younger individual, aged 45 to 49, and had the ALJ applied the correct rule under the Grids, Claimant would have been found disabled. *Id.* Claimant thus concludes that the second ALJ should have considered the first ALJ's determination that Claimant was limited to sedentary work and that raising her exertion level to medium without explanation of the discrepancy in the two decisions was error in violation of the fairness principles of *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999) and *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987). The Commissioner contends that *Albright* does not apply because the prior decision was vacated and thus the RFC finding was not binding in the subsequent determination. Def.'s Mem. [DE-35] at 8-11. The court agrees with the Commissioner that the ALJ was not required to consider the prior RFC determination.

In *Albright*, the claimant sought a period of disability, Disability Insurance Benefits, and SSI payments after sustaining neck and lower back injuries from a work-related automobile accident and a subsequent traffic accident. 174 F.3d at 474. The ALJ denied the claim, finding that "any lingering impairment was 'not severe,'" and that the claimant's testimony regarding the intensity of his pain was not credible. *Id.* Albright did not appeal, but instead filed a new claim for the period following the ALJ's prior decision. *Id.* The second ALJ determined, based on the Fourth Circuit case of *Lively* and its purported codification in Social Security Acquiescence Ruling ("AR") 94-2(4), that he was required to adopt the findings of the sequential evaluation process from the prior claim unless there was new and material evidence relating to that finding. *Id.* at 474-75. Concluding there was no new and material evidence, the ALJ denied the claim and the Appeals Council denied review. *Id.* at 475. On appeal to the district court, the magistrate judge determined that the Social Security Administration ("SSA") in AR 94-2(4) had interpreted *Lively* too broadly and the district court

9

agreed, remanding Albright's claims for reconsideration. *Id.*

The court of appeals affirmed the district court, holding that the SSA impermissibly merged the claimant's two claims into one in contravention of the agency's "traditional rule that, absent an identity of claims, principles of claim preclusion (historically referred to as res judicata) do not apply." *Id.* at 476. The court went on the explain that "[i]n practice, then, AR 94-2(4) carves out an exception to the general rule that separate claims are to be considered separately." *Id.* In doing so, the *Albright* court distinguished the *Lively* case on which AR 94-2(4) was premised. *Id.* at 477. In *Lively*, the claimant was found to have the RFC to perform light work, and his claim was denied. *Id.* at 475. However, two years later after Lively became 55 years of age, which potentially would have resulted in an award of benefits with an RFC for light work, Lively reapplied for benefits, but the ALJ denied the claim based on the finding that Lively had the RFC to perform medium work. *Id.* The court of appeals determined that the prior finding that Lively was capable of only light work was "highly probative" but "not conclusive" and "had the agency produced substantial evidence of improvement in Lively's condition 'to indicate that [he] was capable of performing medium work,' the prior finding to the contrary need not have been sustained." *Id.* at 477 (quoting *Lively*, 820 F.2d at 1392) (footnote omitted). Thus, the *Albright* court rejected AR 94-2(4) as a restatement of *Lively* and determined Albright's claims were not barred by the ruling in his prior case. *Id.* at 478. The SSA subsequently issued Acquiescence Ruling 00-1(4), 65 FR 1936-01 (Jan. 12, 2000), which rescinded AR 94-2(4) and interpreted *Albright* to hold as follows:

> [W]here a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

10

AR 00-1(4).

Here, *Albright* and AR 00-1(4) did not require the second ALJ to consider the prior ALJ's decision because that decision had been vacated and thus no finding remained to be considered in the subsequent determination. *See Monroe v. Colvin*, No. 7:13-CV-74-FL, 2014 WL 7404136, at *2 (E.D.N.C. Dec. 30, 2014) (unpublished) ("Contrary to plaintiff's argument, however, the ALJ was not required to give weight to the findings made in the 2010 decision, because it was vacated and not the final agency decision of the Commissioner.") (citing *Albright*, 174 F.3d at 478; AR 00-1(4)); *Williams v. Colvin*, No. 7:12-CV-242, 2013 WL 5151797, at *4 (W.D. Va. Sept. 13, 2013) (unpublished) ("[B]oth of the prior ALJ decisions in this case were vacated, and thus there was no 'prior finding' to be afforded any weight under SSAR 00-1(4)."). *But see Bordwell v. Colvin*, No. 1:11-CV-01096-TWB-LPA, Order [DE-19] (M.D.N.C. July 24, 2014) (rejecting argument that the rule of *Albright* and *Lively* does not apply to prior decisions vacated by the Appeals Council). Accordingly, where the prior ALJ's decision had been vacated by the Appeals Council, the ALJ did not err in failing to consider the prior RFC determination.

Notwithstanding the immateriality of a prior vacated decision, a claimant is not without remedy should the SSA vacate an ALJ's previous order simply to engage in the "'bait-and-switch' approach" rejected in *Lively*. *Albright*, 174 F.3d at 478. Paramount to the court's decisions in *Albright* and *Lively* was the basic tenet that substantial evidence must support the Commissioner's determination. *Id.* at 477. Thus, the court's substantial evidence review is sufficient to avoid a result that may be "reasonably perceived as unjust and fundamentally unfair." *Id.* at 477-78. In that vein, the court turns to Claimant's final contention that the ALJ erred in evaluating the medical opinion evidence.

11

## B. Medical Opinion Evidence

Claimant contends that the ALJ failed to weigh or even mention the conclusions of Dr. Ahmed's June 25, 2009 opinion. Pl.'s Mem. [DE-33] 10. Specifically, Claimant argues that while the ALJ mentioned some of Dr. Ahmed's examination findings at step 2 when evaluating the severity of Claimant's impairments, the ALJ erred in failing to discuss Dr. Ahmed's opinion regarding Claimant's functional limitations, some of which were consistent with light work and some with sedentary work. *Id.* Claimant concludes that the failure to evaluate Dr. Ahmed's opinion further impacted the evaluation of Claimant's treating physician Dr. Burke's opinion, which was given little weight as the ALJ concluded the opinion was unsupported by the evidence. *Id.* The Commissioner acknowledges that the ALJ failed to assign explicit weight to Dr. Ahmed's opinion, but contends that the ALJ's decision provides a sufficient basis to facilitate review by the court. Def.'s Mem. at 11-14. The court concludes that the failure to weigh Dr. Ahmed's opinion was harmless error because its consideration would not support a favorable determination for Claimant.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly

less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citing *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747, 750 (6th Cir. 2007); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long

as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (unpublished) (citations and quotations omitted).

At issue here is the June 25, 2009 opinion of Dr. Ahmed, a state agency examining consultant. (R. 251-59). Dr. Ahmed noted Claimant's chief complaints as history of left leg pain, right arm pain, rib pain, and hip pain, that he had seen Claimant for a disability examination in 2006 for similar complaints, and that Claimant had a rib fracture in 2003, a right arm fracture in 2006, and a left leg crush injury. (R. 251). Dr. Ahmed indicated Claimant was independent with activities of daily living with complaints of pain. (R. 252). Dr. Ahmed's physical examination findings were as follows:

> 2+ pulses. Negative edema. Range of motion is full both on upper and lower extremities, except on right forearm. Range of motion is inconsistent and variable. The claimant's reflexes are 2/4 throughout. Muscle strength is 5/5 with give away weakness in the hand, right arm, and left ankle. The claimant is able to walk on heel and toe with antalgic gait pattern. She is not able to do squat and rise because of complaint or pain. She is able to raise her arm overhead and perform dexterous hand movements. She does so with reluctance and with complaints of pain. Her right forearm examination showed no significant bony deformity clinically present. The claimant's left leg examination showed no bony deformity present. Her hip range of motion is full bilaterally. Patrick's test is negative. Muscle tone and bulk are normal. Her gait is variable.

(R. 253). Dr. Ahmed assessed Claimant with history of right forearm fracture with ongoing chronic pain, history of left leg fracture, healed, with chronic pain, and complaint of hip pain. (R. 254). Dr. Ahmed summarized his findings as follows:

> The claimant has the above complaints. Objectively, there are no neurological findings on the examination. Her examination is variable. She is reluctant to use her right forearm, although she does use her right arm. When she sat on the examining table, she pushed herself back using both arms, and she does get full range of motion on the arm when her attention is diverted. There is inconsistency in her range of

14

motion and strength examination.

*Id.* Dr. Ahmed determined Claimant's prognosis for gainful employment was "fair with pain management" and concluded that he "did not find any clinical evidence for significant chronic pain." *Id.* Dr. Ahmed also provided a medical source statement regarding Claimant's physical ability to do work-related activities. (R. 255-58). Dr. Ahmed determined Claimant could frequently lift and carry up to ten pounds and occasionally up to 20 pounds, sit for four hours and stand and walk for two hours at one time without interruption, and sit for six hours and stand and walk for one hour in an eight hour workday. (R. 255-56). Dr. Ahmed cited "c/o pain" as the justification for these limitations. *Id.*

The ALJ discussed Dr. Ahmed's examination findings at step 2 in determining that Claimant's history of fractures were non-severe impairments because they have no more than a minimal effect on Claimant's ability to perform basic work activities. (R. 271). The ALJ did not weigh Dr. Ahmed's opinion regarding Claimant's functional limitations (R. 274-75), and this was error. However, such error was plainly harmless because, contrary to Claimant's contentions, consideration of Dr. Ahmed's opinion would not result in an award of benefits to Claimant and the opinion does not bolster Dr. Blake's opinion.

While noting Claimant's history of fractures, Dr. Ahmed's opinion is explicit that he found no objective basis for the pain alleged by Claimant. (R. 254). Dr. Ahmed noted Claimant's history of fractures and complaints of pain, but then concluded that "[o]bjectively, there are no neurological findings on examination" and no "clinical evidence for significant chronic pain." *Id.* Likewise, the physical limitations to which Dr. Ahmed opined were based solely on Claimant's complaints of pain. (R. 255-58). It is well-settled that "'[p]ain is not disabling per se, and subjective evidence of pain

15

cannot take precedence over objective medical evidence or the lack thereof.'" *Craig*, 76 F.3d at 592 (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)). Here, Dr. Ahmed's opinion identifies no "objective evidence [of] the existence of an underlying impairment that could cause the pain alleged . . . ." *Id.* at 593. Therefore, Dr. Ahmed's opinion does not support a finding that Claimant is disabled and further consideration of Dr. Ahmed's opinion would not have altered the ALJ's ultimate decision. *See Love-Moore*, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (finding the ALJ's failure to consider a medical opinion was harmless where such consideration would not have altered the ALJ's conclusion), *aff'd sub nom.*, *Moore v. Colvin*, 584 F. App'x 155 (4th Cir. 2014). For the same reasons, further consideration of Dr. Ahmed's opinion would not have changed the ALJ's evaluation of Dr. Blake's opinion regarding Claimant's physical limitations due to pain. In fact, Dr. Blake's comments indicate that the questionnaire reflected Claimant's own opinion of her abilities rather than Dr. Blake's opinion. (R. 645 ("All questions/responses were given directly by patient after direct questioning (per form). No objective data reported only subjective info reported.") (emphasis in the original)). Accordingly, the ALJ's failure to further evaluate and assign a specific weight to Dr. Ahmed's June 25, 2009 opinion was harmless error.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-32] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-34] be ALLOWED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file

timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 2 day of February 2015.

Robert B. Jones, Jr.
United States Magistrate Judge